IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

MARTIN LANGFORD

Criminal No. 26-216

**SUPPLEMENTAL MOTION OF THE UNITED STATES FOR PRETRIAL DETENTION**

The United States of America, by Troy Rivetti, United States Attorney, and Katherine C. Jordan, Assistant United States Attorney, both for the Western District of Pennsylvania, hereby requests that the Court detain defendant Martin Langford without bail pending trial of this matter and hold a hearing, pursuant to 18 U.S.C § 3142, for the purpose of demonstrating that Defendant poses a danger to the community and that no condition or combination of conditions of release will reasonably assure the safety of the community and the appearance of Defendant as required.

**SUPPORTING SUGGESTIONS FOR PRETRIAL DETENTION**

1. The United States moves for detention due to this case involving a serious danger to the community, should the defendant be released. Taken together, the charges in this case; the strength of the government's evidence; and the fact that the defendant faces a significant period of incarceration, if convicted all support the United States' motion pursuant to 18 U.S.C § 3142(f).

2. In determining whether conditions of release exist that will reasonably assure the appearance of the defendant as required and reasonably assure the safety of the community, the Court, pursuant to 18 U.S.C. § 3142(g), must consider several factors. These factors include the nature and circumstances of the offense charged, the weight of the evidence against the

defendant, the defendant's history and characteristics, and the danger to any person or the community the defendant would pose if released. After consideration of these factors, the United States requests the pretrial detention of the defendant.

Nature and Circumstance of the Offense Charged

3. On October 13, 2026, an indictment was returned charging defendant Langford, and others, with Conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846, and two counts of Distribution of 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii). On October 21, 2026, the defendant was arrested by the Drug Enforcement Administration.

4. It's alleged that on June 7, 2025, defendant Langford sold a kilogram of cocaine to a DEA informant, in exchange for prerecorded funds, which Langford secreted under his shirt before returning to his residence. DEA's subsequent investigation revealed that Langford was supplied with kilograms of cocaine by codefendant Terrance Bonner.

On January 22, 2026, DEA was conducting surveillance of Bonner, when they observed Bonner place a black bag into a grey Acura. Bonner walked away from the Acura and codefendant Maurice Tinsley entered the vehicle and drove away. TINSLEY was followed from the area and traffic stopped. He gave consent to search his vehicle, and two apparent kilograms of cocaine were recovered.[1]

Throughout the investigation, DEA observed Bonner meeting with multiple individuals at one of his two "stash houses." One stash apartment was located at 1800 Fifth Avenue in Pittsburgh's Hill District, and another located at the City Vista Apartments in Greentree. DEA

1 One kilogram was lab tested as cocaine. The other had "no detectable controlled substance."

believed that many of these meetings were for the purpose of exchanging drugs and cash. These meetings often occurred with codefendants Roddell Smalls and Justin Rumble.

On March 30, 2026, codefendant Rashawdi Pugh was observed with Bonner at the Fifth Avenue apartments. Law enforcement observed a significant bulge in his front pants pocket. Pugh was stopped by law enforcement and approximately 250 grams of cocaine was seized from his vehicle.

On June 1, 2026, Bonner and Langford met at Langford's apartment and drove away in separate vehicles. After approximately 30 minutes, Bonner and Langford were observed meeting again in a parking lot, before Langford returned home with a white object in his hand. Langford then walked to a dumpster across the street from his house and threw away a brown bag that was in his car. The bag was seized by DEA and a police K9 indicated the presence of narcotics.

On June 25, 2026, Bonner was observed meeting with Rumble at the City Vista Apartments. After meeting with Rumble, Bonner appeared to be concealing something in his pocket. Bonner then met with codefendant Oscar Stokes, in Stokes' vehicle. Stokes was pulled over by law enforcement and they recovered approximately 750 grams of cocaine and $11,750 from Stokes' vehicle.

In early August 2026, an informant arranged for the purchase of a kilogram of cocaine from Langford. The requested kilogram was not immediately available. During the conversations, Langford told the informant that he had "three or four" people that were also contacting him about purchasing kilograms of cocaine, but that he was being cautious because of recent arrests/seizures. Langford stated, "So I just been a little cautious, right. But I put a call in yes, cuz you like the third or fourth person to hit me. I put a call in uh two days ago. My mans said let me know." Langford then informed the confidential informant that he would receive the cocaine at the "field."

On August 7, 2026, Langford was observed at the Chartiers playground and football field. Rumble was observed meeting with Bonner and supplying him with a black bag. Bonner was then followed to the playground, with the same black bag.




While inside the playground, Bonner met with Langford and was observed placing the bag, which contained a kilogram of cocaine, into Langford's truck.




Langford sat in the driver's seat while he spoke with Bonner, and children played nearby.




Langford then left the playground and met with the informant and provided the informant with a kilogram of cocaine in exchange for money. He then returned to the playground/field,

where he met with Bonner again. Law enforcement believe Langford provided Bonner with the proceeds of the kilogram sale. Bonner then returned to Rumble, who was seen carrying a full silver bag, believed to be full of cash, into his house.

Three days later, on August 10, 2026, Bonner was observed meeting with Roddell Smalls outside of an Urgent Care. Bonner placed a black object into Smalls' car. When Smalls was traffic stopped a short distance away, law enforcement recovered 2 kilograms of cocaine in a black bag from Smalls' car.

DEA then executed a search warrant on Bonner's stash house at the City Vista Apartments on August 11, 2026, and recovered approximately a half kilogram of cocaine and a stolen firearm in a bathroom closet. In the garbage can, they recovered 5 kilogram sized wrappers, which tested positive for the presence of cocaine and a receipt in the name of "Terrance B."

Weight of the Evidence Against Defendant

5. The United States has a strong case against the Defendant. The defendant is alleged to have been part of a kilogram level drug operation, as mentioned above. The defendant was captured on video, twice, supplying a kilogram of cocaine to an informant. A search warrant of his residence on October 21, 2026, revealed unexplained wealth, in the form of high-end jewelry.

A grand jury indicted the defendant on three counts and approved a notice of special findings. If the defendant is convicted, he faces a mandatory minimum sentence of 15 years' incarceration.

Defendant's History and Characteristics

6. The defendant does have long-standing ties to the Pittsburgh community, including well-documented contributions to the Westside Mustangs Youth Athletic Association. However, he has shown through his actions that he is willing to betray those ties for the sake of greed.

Normally, a defendant's employment and community involvement may weigh in favor of release. However, the defendant's involvement in youth football here was intertwined with his criminal activity. Indeed, the defendant attempted to use the esteem that he holds within the youth football community, and the sanctity of the playground itself, as a shield to his criminal actions. While his program received "Stop the Violence" grant money, the defendant contributed to the violence associated with drug trafficking within the Western District of Pennsylvania.

In addition to his more recent criminal activity, the defendant has a prior criminal conviction from 2004 for Conspiracy to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846. The defendant was sentenced to 121 months' incarceration, followed by 5 years' supervised release in that matter. While the defendant touted his "exemplary postconviction adjustment" in a motion for early termination of supervised release (ECF 19, Doc. No. 04-CR-118), his present actions bely that "exemplary adjustment."

<u>Risk to the Community</u>

7. As mentioned above, defendant poses a serious risk to the safety of the community. Courts of this district have found that drug trafficking carries with it an inherent risk to the community.

> "The Court agrees with others which have observed that drug trafficking poses a substantial risk of harm to the community, particularly the trafficking of significant quantities of a dangerous, addictive drugs such as cocaine as alleged to have occurred here. *See Bastianelli*, 2018 U.S. Dist. LEXIS 28141, 2020 WL 1015269, at *8 ("Drug trafficking certainly poses a substantial risk of harm to the community, particularly the trafficking of significant quantities of very dangerous and addictive drugs [ ]."); *United States v. Gibson*, 481 F. Supp. 2d 419, 423 (W.D. Pa. 2007) ("[V]iolence is not the only danger to the community this court must consider. The court must also consider the danger of trafficking in illicit drugs."). Distribution of Schedule II controlled substances like cocaine have a "high potential for abuse" and that abuse "may lead to severe psychological or physical

> dependence." *See Bastianelli*, 2018 U.S. Dist. LEXIS 28141, 2018 WL 1015269, at *8 (citing 21 U.S.C. § 812(b)(2)(A), (C)). Accordingly, the high volume of cocaine allegedly trafficked in this case presents a considerable danger to the safety of the community."
>
> United States v. Araiza-Vega, 2020 U.S. Dist. LEXIS 207949, *23

**CONCLUSION**

11. Consideration of the 18 U.S.C. § 3142(g) factors support pretrial detention. Specifically, the weight of the evidence; the fact that Defendant will likely be subject to a period of incarceration, if convicted; Defendant's actions demonstrate a serious risk to the safety of the community.

Respectfully submitted,

TROY RIVETTI
United States Attorney

By: */s/ Katherine C. Jordan*
KATHERINE C. JORDAN
Assistant United States Attorney
PA ID No. 201135